**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 18-389 (BAH) |
| LINWOOD DOUGLAS THORNE, | Chief Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM AND ORDER**

Two weeks after this Court denied defendant Linwood Douglas Thorne's motion for temporary release from pretrial detention, *see* Mem. & Order (Mar. 31, 2020) ("March Denial Order"), ECF No. 90, he filed the pending Second Motion for Temporary Release From Detention Based Upon the COVID-19 Pandemic ("Def.'s Mot."), ECF No. 91. This second motion is presented with far more extensive documentation than the first in an effort to cure gaps in his prior motion and fulfill the statutory requirements of 18 U.S.C. § 3142(i). Based upon the memoranda submitted in support and opposition, the exhibits thereto, and the entirety of the underlying record, he again falls short, as explained below. Consequently, this motion is **DENIED**.

The defendant has been detained since January 10, 2019, when he conceded the government's motion for pretrial detention and waived written findings of fact, *see* Min. Entry (Jan. 10, 2019), and is currently awaiting trial on six counts of unlawful possession with intent to distribute heroin, marijuana, and fentanyl, as well as unlawful firearms possession, in violation of 18 U.S.C. §§ 924(c)(1) and 922(g)(1), and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(C), 841(b)(1)(D), and 846. *See* Superseding Indictment, ECF No. 28. Due to his prior

felony drug conviction, in 1999, for Conspiracy to Distribute and Possess with Intent to Distribute Crack Cocaine and Possession with Intent to Distribute Crack Cocaine, in the District of Maryland, he faces an enhanced statutory penalty, pursuant to 21 U.S.C. §§ 841(b), 851. Gov't's Notice of Prior Conviction And Sentencing Enhancement Pursuant To 21 U.S.C. § 851, ECF No. 70.  Thus, if convicted, defendant faces "up to life imprisonment, along with a mandatory minimum sentence of twenty years (based on the penalties for 18 U.S.C. § 924(c), 21 U.S.C. § 841(b)(1)(A)(i), and the enhancement, ECF No. 70)."  Gov't's Opp'n Def.'s Mot. for Temporary Release at 9, ECF No. 89.  These charges arose from the seizure at the defendant's residence of over 44 kilograms of heroin, laced with fentanyl, over 50 pounds of marijuana, and five firearms.

As noted, defendant previously moved, on March 27, 2020, for temporary release from pretrial detention on two grounds: (1) 18 U.S.C. § 3142(i), which allows for temporary release "in the custody of a United States marshal or another appropriate person" when release is "necessary for preparation of the person's defense or for another compelling reason," March Denial Order at 2; and (2) the Fifth Amendment's due process clause, in light of the health risk posed by the COVID-19 pandemic, *id*. at 4; *see also* Def.'s Mot. for Temporary Release From Detention Based Upon the COVID-19 Pandemic ("Def.'s 1st Mot."), at 3–4, ECF No. 88. Defendant's first motion was denied for two reasons: (1) defendant did not adequately document his medical history and purported health risk, and thus failed to meet his burden in demonstrating that temporary release was "necessary," *see* March Denial Order at 2–3; and (2) defendant did not identify an "appropriate person" to act as a custodian, as required by Section 3142(i), *see id.* at 3–4 (citing 18 U.S.C. § 3142(i) (stating that release may be made to "the custody of a United States marshal or another appropriate person...")).  This Court explained that, "given the

2

circumstances, including the seriousness of the charges, the lengthy period of incarceration faced

by defendant, and defendant's apparent flight, following execution of the search warrant at his

residence in December 2018, to Maryland, where he was subsequently arrested in January 2019,

no "appropriate person" appears to be available to assure compliance with any release

conditions." *Id.*[1]

In his second pending motion for temporary release, defendant, again, does not contest or

seek reconsideration of the determination that no condition or combination of conditions of

release could reasonably assure his appearance as required or the safety of the community, under

18 U.S.C. § 3142(e).  Instead, defendant now bolsters his motion for temporary release under

Section 3142(i), by proposing, after one false start, that defendant's niece, is an appropriate

custodian.  Def.'s Supplemental Reply to Gov't's Opp'n to Def.'s Mot. ("Def.'s Suppl. Reply"),

at 1, ECF No. 95.[2]  In addition, he provides detailed medical records relating to a 2014 lung

surgery and diagnosis of hypertension.  *See* Def.'s Mot. at 2–3; Def.'s Resp. Court Order on

Impact of Memorandum Opinion and Temporary Restraining Order ("Def.'s Resp."), ECF No.

96.

Section 3142(i) "provides a distinct mechanism for temporarily releasing a detained

defendant, in a manner that has nothing to do with a revisiting of the initial detention

---

[1]  Defendant's Fifth Amendment due process claim was also found not to warrant release, since a violation of these rights occurs only when conditions of confinement "objectively constitute a 'serious' deprivation and stem from the 'deliberate indifference' of custodial officials," March Denial Order at 5 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)), and finding that D.C.'s Department of Corrections, where defendant is detained, "has adopted protocols and is taking precautions to isolate known Covid-19 cases and protect detainees like the defendant," *id.* This claim is not revived in the pending second motion.

[2]  Defendant initially proposed a "close friend" as a third-party custodian, Def.'s Mot. at 1–2, but following the government's sealed submission containing information making that person a wholly inadequate custodian, Gov't's Opp'n to Def.'s Mot., at 6–7, ECF No. 93, defendant requested a temporary stay in consideration of his motion to identify a more appropriate person, which motion was granted, Minute Order (April 17, 2020) (granting defendant's request for additional "time to obtain the new name and contact information" for a third-party custodian "before ruling on this motion" (quoting Def.'s  Reply to Gov't's Opp'n to Def.'s Mot., at 2, n.3, ECF No. 94)).

determination." *United States v. Lee*, 19-cr-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020).  Under this statutory provision, a defendant otherwise subject to pretrial detention may be granted temporary release by showing both (1) that he would be released to "the custody of a United States marshal or another appropriate person," and (2) that the temporary release is "necessary for" a "compelling reason."  18 U.S.C. § 3142(i); *see Lee*, 2020 WL 1541049, at *3; *United States v. Armstead*, Nos. 19-cr-00369 (APM), 18-cr-00357 (APM), 2020 WL 1821130, at *1 (D.D.C. Apr. 10, 2020).  An "appropriate person" under Section 3142(i), should at least meet the qualifications for a designated third-party custodian, who "must agree[] to assume supervision and to report any violation of a release condition" and be "able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community."  18 U.S.C. § 3142(c)(1)(B)(i).  Then, to succeed on a 3142(i) motion, "[a] defendant has the burden of showing that temporary release is 'necessary,'" *Lee*, 2020 WL 1541049, at *3 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020)).

In assessing both statutory elements for exercise of the discretion inherent in Section 3142(i), the Court must be mindful of the factors set out in 18 U.S.C. § 3142(g).  Obviously, whether a third-party custodian is "appropriate" for a particular defendant, and whether the reason for release is "compelling" and makes release "necessary," under Section §3142(i), turns on the seriousness and circumstances of the offense charged, the defendant's criminal history and characteristics, and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," 18 U.S.C. § 3142(g)(4), even on a temporary basis.

Here, the defendant has not met either prong of this burden.  To begin with, the defendant argues that his medical history and present health condition put him at a heightened risk of

4

danger in the face of COVID-19, and that such risk is a "compelling reason" for temporary release.  To this end, the defendant submits medical records demonstrating that he currently suffers from hypertension and had lung surgery in 2014.  *See* Def.'s Mot. at 2–3; *id.*, Ex. 2, Continuity of Care Document (Apr. 9, 2020), ECF No. 91-2; [C.T.F. Intake Screening] (Jan. 1, 2019), ECF No. 97-2; [D.C. Jail Sick Call Exam Record] (Mar. 17, 2020), ECF No. 97-4.  Additionally, the defendant relies on a medical declaration, which, though not specifically tailored to the defendant's circumstances, confirms that hypertension and chronic respiratory diseases increase a person's vulnerability to COVID-19.  *See* Def.'s Mot., Ex. 3, Declaration of Dr. Jonathan Giftos (Apr. 1, 2020) ("Giftos Decl.") at 6, ECF No. 91-3.  Finally, the defendant points to recent findings made in *Banks v. Booth*, No. 20-cv-849 (CKK), 2020 WL 1914896 (D.D.C. Apr. 19, 2020), where another Judge on this Court determined, *inter alia*, that "as of April 4, 2020, the infection rate in DOC facilities was over seven times the infection rate of the District of Columbia at large."  *Banks*, 2020 WL 1914896, at *6; Def.'s Resp. at 2–3.

The government concedes, as it must, the seriousness of the COVID-19 pandemic, but questions the severity of defendant's underlying health condition.  *See* Gov't's Resp. Regarding Impact of Temporary Restraining Order and Memorandum Opinion in *Banks v. Booth*, 20-cv-849 (CKK) ("Gov't's Resp.") at 5–7, ECF No. 101.  The government points out that defendant's health records are equivocal.  While defendant suffers from hypertension, the seriousness of this condition is somewhat mitigated by records showing that he does not take prescribed medications consistently when not in jail.  *See* [Medical Exam Record] (n.d.), ECF No. 97-3 (defendant "non-compliant with medications" for hypertension; "on & off meds on street, meds when incarcerated only").  Thus, in this respect, defendant's hypertension is treated and treated consistently when he is detained.

As to defendant's respiratory condition, he had lung surgery in 2014, but more recent medical screenings do not reveal any serious, ongoing complications or current diagnosis of lung disease.  Chest and lateral x-rays administered in March, 2020 showed "pleural scarring" from the surgery but "[n]o acute soft tissue or osseous pathology" and "[n]o focal infiltrates."  [D.C. Jail Sick Call Exam Record] (Mar. 17, 2020), at 1, ECF No. 97-4.  A physical examination revealed no respiratory irregularities, and defendant's complained-of symptoms were ultimately diagnosed as a routine upper viral respiratory infection.  *Id*. at 3.

Notwithstanding the legitimate questions raised by the government, defendant's medical conditions raise a heightened risk to the severity of a COVID-19 infection for him, and therefore heightened concern about the risks posed by his continued pretrial detention.  This does not make for an easy case.  These concerns are only compounded by the findings in *Banks* about deficient conditions in the District's Department of Corrections ("DOC").  Although the *Banks* court did not order a general release of prisoners,  *Banks*, 2020 WL 1914896, at *13, DOC conditions, as documented in a thorough inspection report prepared by an independent third-party, prompted issuance of a Temporary Restraining Order ("TRO") requiring DOC to undertake immediate remedial measures to prevent the further spread of COVID-19 within DOC facilities, including, *inter alia*, (1) expediting the "triage process associated with sick call requests on [] non-quarantine units," *Banks*, 2020 WL 1914896, at *13; (2) conducting "additional staff training on the use of the non-touch, infrared thermometers," *id*. at *14; (3) taking "immediate steps to provide consistent and reliable access to legal calls, personal telephone calls, daily showers, and clean clothing and clean linens to all inmates on isolation status," *id*.; (4) ensuring "appropriate and consistent implementation of social distancing policies by addressing limitations in current staffing levels," *id*.; and (5) ensuring "that all PPE issued is properly fitted" and that "all DOC

staff receive instruction on the proper disposal of PPE," *id*.  DOC is taking steps to comply with these directives, so the *Banks* TRO, standing alone, does not justify the defendant's release from detention at this time.  *See* Gov't's Resp. at 3.  Indeed, the Court retains an independent responsibility to assess the individualized circumstances of this case in light of the statutory requirements of the Bail Reform Act, and courts in this district have continued to deny emergency motions for release since the issuance of the TRO in *Banks* when individualized circumstances so require.  *See, e.g.*, Mem. Op. & Order, *United States v. Jones*, No. 19-cr-232 (EGS), ECF No. 41, (D.D.C. Apr. 23, 2020).

The individualized circumstances of defendant's case make it difficult to conceive of any third-party custodian "able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community."  18 U.S.C. § 3142(c)(1)(B)(i).  In any event, the current proposed third-party custodian certainly does not qualify.  As noted *supra* n. 2, defendant withdrew his initial proposed third-party custodian and now suggests his niece, who lives in a two-bedroom apartment in Oxon Hill, Maryland, with her three-year-old child, and works at night as an unarmed security guard.  Def's Suppl. Reply at 1.  During nights, the niece's mother supervises the child.  *Id*.  The niece's parental and work responsibilities raise obvious concern about her practical ability to monitor defendant, were he released on strict home confinement, let alone control defendant's conduct to stop him from fleeing, as he appears to have done in this case after execution of the search warrant at his home, or to stop him from engaging in criminal activity.  This concern is magnified by the fact that the defendant's residence, where large quantities of heroin and marijuana and firearms were seized, pursuant to a search warrant, was shared with a woman and her minor child.  *See* Gov't's Opp'n to Def.'s Mot. at 7, ECF No. 93.  The presence of a minor

child posed no obstacle to defendant's charged conduct.  Defendant's niece does not provide

confidence as an "appropriate" third-party custodian within the meaning of Section 3142(i).

Moreover, based on monitoring of defendant's jail calls while detained, the government

has identified several calls highlighting defendant's anger towards one of the witnesses in the

case, which witness has repeatedly expressed fear for his/her life due to concerns over defendant

and, during the course of the government's investigation, has been shot at in a drive-by shooting.

Gov't Resp. at 4.  At this time, the government "cannot and does not attribute that shooting to

the defendant." *Id.*  Nonetheless, the government expresses meaningful and good-faith concerns

over the security of its witnesses and the potential threat posed by defendant, whose

communications would be freed of any law enforcement monitoring if released to the custody of

his niece.

Weighing all of the individual facts of this case carefully, this Court concludes that the

defendant's health condition, even in the midst of the COVID-19 pandemic and conditions in

DOC facilities, does not make his temporary release "necessary," as required under Section

3142(i), let alone to the proposed third-party custodian, in light of the risks posed by defendant to

flee and endanger the community.  Indeed, as the government sums up the specific circumstances

here, "it is impossible to envision a scenario where a figure like the defendant, given his criminal

history, demonstrated flight, and odd conduct before the Court, can be trusted to take this Court's

orders seriously."  *Id*. at 5.[3]

Accordingly, for these reasons, it is hereby

---

[3]    The "odd conduct" referenced by the government has prompted this Court to grant, in July 2019, defense counsel's request for defendant's competency evaluation, Order (July 12, 2019), ECF No. 15, and includes defendant's subsequent correspondence to the Court, *see* Def.'s Personal Letters (Aug. 6, 2019), ECF Nos. 17, 18.

**ORDERED** that the defendant's Second Motion for Temporary Release From Detention Based Upon the COVID-19 Pandemic, ECF No. 91, is **DENIED**.

**SO ORDERED.**

Date: April 27, 2020

_____
BERYL A. HOWELL
Chief Judge